UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:20-CR-91 JCM (DJA) |
|---|---|
| Plaintiff(s), | ORDER |
| v. | |
| JOHN MATTHEW CHAPMAN, | |
| Defendant(s). | |

Presently before the court is defendant John Matthew Chapman ("defendant")'s motion to dismiss (ECF No. 69). The government filed a response (ECF No. 78), to which defendant replied (ECF No. 93).

I.  **Background**

This criminal action concerns a kidnapping that preceded the death and murder of a woman identified in all pleadings by the initials "J.F." ("J.F." or "the victim").

As alleged in the complaint, in mid-September of 2019, defendant drove J.F. from her residence in Pennsylvania to Las Vegas, Nevada. (ECF No. 2 at 6). The signatory of the complaint, a special agent with the Federal Bureau of Investigation, alleges that defendant "misled" J.F. to believe the purpose of the trip was a vacation to look at potential residences in Las Vegas. (*Id.*). However, this purpose was a ruse, as defendant developed a plan before they left Pennsylvania to kill the victim and even had a "kill kit" ready before their departure for Nevada. (*Id.*).

Defendant and J.F. arrived in the Las Vegas, Nevada area on September 23, 2019. (*Id.*). Two days later, defendant convinced her to drive into the desert under the guise of participating in a sadomasochistic and bondage-themed photo shoot. (*Id.*). Upon arriving in the desert in Lincoln County, Nevada, defendant used plastic zip ties to affix the victim to a signpost. (*Id.*). After applying duct tape to her mouth and then to her nose, defendant watched the victim die from asphyxiation. (*Id.*).

Subsequently, defendant left J.F.'s naked body next to the signpost and traveled back to Pennsylvania, discarding her clothing at various locations along the return route. (*Id.*). Defendant admitted that he killed J.F. for financial reasons. (*Id.*). The Lincoln County sheriff's office reported that it had located a body on October 5, 2019, later identified as J.F. (*Id.* at 6-7).

Defendant was initially charged by complaint in this district on February 20, 2020, with one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1). (ECF No. 2). He made his initial appearance and had his detention hearing on May 1, 2020. (ECF No. 3). A preliminary hearing commenced on May 15, 2020, before Magistrate Judge Brenda Weksler. (ECF No. 13).

On May 18, 2020, the government advised the court that it would be seeking an indictment the next day, potentially rendering Judge Weksler's probable cause determination moot. (ECF No. 69-1 at 83-85). On May 19, 2020, a grand jury returned a one-count indictment charging defendant with the instant offense. (ECF No. 1).

Defendant filed the instant motion to dismiss on August 29, 2022, more than two years after the grand jury returned the indictment. (ECF No. 69). Defendant claims that the indictment fails to state a cognizable offense, and he makes numerous factual assertions to support his claim.

**James C. Mahan**
**U.S. District Judge**

- 2 -

Additionally, defendant posits that the government did not accurately instruct the grand jury on the law and the government has not indicted him with sufficient particularity.

As explained in greater detail, *infra*, all of defendant's arguments are flawed. As the government correctly avers, defendant filed his motion under the pretext of a motion to dismiss pursuant to Rule 12 of the Federal Rules of Criminal Procedure when it really is a Rule 29 motion for judgment of acquittal. The motion implicates a multitude of factual questions that only the jury can resolve, and the court would invade the jury's province by granting defendant's motion.

## II.     Legal Standard

A criminal defendant may move to dismiss an indictment at any time prior to trial so long as the issues raised can be determined without a trial on the merits. *See* Fed. R. Crim. P. 12(b)(1). In deciding a motion to dismiss under Rule 12, the "district court is bound by the four corners of the indictment." *United States v. Boren*, 287 F.3d 911, 914 (9th Cir. 2002). The court must accept all facts alleged in the indictment as true. *Id*. The indictment either states an offense or it does not. *See id*.

"A defendant may not properly challenge an indictment, sufficient on its face, on the grounds that the allegations are not supported by adequate evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). "A motion to dismiss the indictment cannot be used as a device for a summary trial on the evidence . . . ." *Id*. The court may not invade the province of the jury and decide by pretrial motion matters "of the general issue." *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The role of the court is to determine whether the indictment is facially valid, and not whether each party is entitled to judgment on the pleadings. *See, e.g. United States v. Titterington*, 374 F.3d 453, 467 (6th Cir. 2004).

## III.    Discussion

**James C. Mahan**
**U.S. District Judge**

- 3 -

A. <u>Legal sufficiency of the indictment</u>

Defendant's primary argument is that even accepting the government's facts as true for the purpose of this motion, the government cannot as a matter of law establish that defendant committed the offense of federal kidnapping, as the indictment fails to state a cognizable offense. (ECF No. 69 at 17).

Under the Federal Rules of Criminal Procedure, an indictment must contain a plain and concise statement identifying the essential facts constituting the charged offense. *See* Fed. R. Crim. P. 7(c)(1). This is a liberal pleading standard adopted by the Ninth Circuit wherein an indictment is legally sufficient when it sets forth the charged offense using the words of the criminal indictment itself. *See United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) ("[i]n cases where the indictment tracks the words of the statute charging the offense, the indictment will be held sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense.").

An indictment need only set forth the elements of the offense charged in adequate detail to inform the defendant of the charge and enable him to plead double jeopardy. *Untied States v. Award*, 551 F.3d 930, 935 (9th Cir. 2009). The indictment need not set forth the specific means by which the defendant violated the statute. *See United States v. Haines*, 2:16-cr-00137-JAD-GWF, 2017 WL 923921, at *1 (D. Nev. Mar. 8, 2017).

Pursuant to Title 18, United States Code, Section 1201(a)(1), there are three elements of federal kidnapping. First, the government must prove the kidnapping occurred by an identified means, whether it be by seizure, confinement, inveigling, decoy, abduction, or carrying away. 18 U.S.C. § 1201(a)(1). Second, the government must prove the defendant held the victim against

**James C. Mahan**
**U.S. District Judge**

- 4 -

her will. *Id*.  Third, the government must prove the defendant transported the victim across state lines or otherwise utilized interstate commerce or an interstate instrumentality. *Id*.

Here, defendant is charged in Count One of the indictment as follows:

> In or about September 2019, in the State and Federal District of Nevada and elsewhere,
>
> JOHN MATTHEW CHAPMAN,
>
> defendant herein, did unlawfully and willfully seize, confine, inveigle, decoy, kidnap, abduct, carry away and hold JF for ransom, reward and otherwise, in committing and in furtherance of the commission of the offense, traveled in interstate commerce from the State of Pennsylvania to the State of Nevada and from the State of Nevada to the State of Pennsylvania, willfully transported JF in interstate commerce from the State of Pennsylvania to the State of Nevada, and used a means, facility, and instrumentality of interstate commerce, that is, a cellular network, the internet, and a vehicle, all resulting in the death of JF.

(ECF No. 1 at 1-2).

The government is correct in arguing that the indictment tracks the statutory language and lists all the essential elements of the offense. (ECF No. 78 at 11); *see Davis*, 336 F.3d at 922. The indictment is legally sufficient and adequate pursuant to Ninth Circuit case law.

In his reply, defendant cites that the mere recitation of the words of the statute is not sufficient to support an indictment. (ECF No. 93 at 3-4); *see United States v. Hamling*, 418 U.S. 87, 117-18 (1974) ("[u]ndoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.").

The language in the indictment is not a mere recitation of the words of the statute. The indictment specifically identifies the states through which defendant traveled with the victim, the

use of a cellular network and vehicle, and the specific act of inveigling the victim. This does not equate to parroting the words of the federal kidnapping statute.

Moreover, just as defendant states the government does not address *Hamling*, defendant fails to address why the more recent Ninth Circuit holding in *Davis*, identifying the liberal pleading standard, is inapposite authority. Accordingly, the indictment is sufficient, and defendant's motion should be denied.

B. Defendant's legal challenges to the indictment

Given that the indictment is legally sufficient, the court need not wade into the various legal and factual challenges defendant makes to its specific contents, as these are Rule 29 arguments under the guise of a Rule 12 motion. However, to appease the defendant's fixation on certain elements of the offense, the court will explain why defendant's challenges are meritless and more appropriate for the jury to decide.

*1. Defendant's sequencing argument*

Defendant spends a great deal of his motion arguing that the federal kidnapping statute requires that the first two elements of the offense—taking and holding—occur *before* transporting the victim across state lines. Defendant is incorrect in making this assertion, and the legal authority he cites to support it does not support his case.

In his motion, defendant repeatedly cites *United States v. Chatwin*, 326 U.S. 455 (1946). Defendant alleges that the *Chatwin* court "assumed the involuntary seizure and detention of a person must take place prior to interstate transportation." (ECF No. 69 at 14). It is true that in *Chatwin*, which defendant, without any basis, calls the "guide star" federal kidnapping case for the Ninth Circuit, the seizure and detention occurred before crossing state lines. (ECF No. 93 at 5), 326 U.S. at 457-59. Nowhere in *Chatwin* does the court state or imply that the facts must occur

**James C. Mahan**
**U.S. District Judge**

- 6 -

in that specific sequence to constitute kidnapping. No mandatory edict pursuant to sequencing exists in *Chatwin*.

Furthermore, extensive legislative refinements have been made to the Federal Kidnapping Act that broadens its scope. *See United States v. Hughes*, 716 F.2d 234, 242 (4th Cir. 1983) (interpreting that a 1972 amendment to the Federal Kidnapping Act resulted in "interstate transportation of the victim [being] intended to be merely a basis for federal jurisdiction rather than an integral part of the substantive crime;" *United States v. Napier*, 518 F.3d 316, 319 (9th Cir. 1975) (holding that the interstate commerce element has been found to "merely furnish[] the basis for the exercise of federal jurisdiction," rather than constitute a formal element of the crime). Defendant is thus incorrect in his belief that the taking and holding elements of the offense must occur prior to the transporting element.

*2. Mental restraints and the holding element*

In his motion, defendant argues that a ruse, such as the one described in the factual background of this case, cannot satisfy the involuntary holding element of federal kidnapping. The government is correct in explaining that defendant is clearly mistaken.

Defendant's most frequently cited case has held that a mental restraint with or without force is sufficient to meet the holding requirement of federal kidnapping. *See Chatwin*, 326 U.S. at 460 ("[t]he act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical or mental restraint for an appreciable period against the person's will and with a willful intent so to confine the victim.").

Again, because the jury should determine the factual means and manner of how the defendant actually committed the offense, the court does not need to engage in an exhaustive analysis of this issue. But the court scolds the defendant for citing the *Chatwin* case only for what

**James C. Mahan**
**U.S. District Judge**

- 7 -

he, mistakenly, believes helps his argument, and thereby engaging in the misleading and bad-faith practice of legal "cherry picking."

### 3. *Physical restraints and the holding element*

Finally, defendant argues that the period of time where he restrained the victim to the signpost before killing her is insufficient to meet the holding element of federal kidnapping. (ECF No. 69 at 19-22). To support his position, defendant cites the Ninth Circuit decision in *United States v. Jackson*, 24 F.4th 1308, 1318 (9th Cir. 2002). In *Jackson*, the court found that the holding was merely "transitory," meaning that the kidnapping was secondary to the assault and was simply a necessary attendant circumstance of the assault. *Id.* at 1311-15. The defendant in *Jackson* assaulted the victim for roughly seven minutes in a specific area of an Indian reservation. *Id.* at 1309-10.

The government adequately distinguishes *Jackson* from the instant matter. The government posits that the killing of J.F. was secondary to her kidnapping. (ECF No. 78 at 20). While this is a factual issue for the jury to decide, the court will allow the government to explain its reasoning as trial. *See Jackson*, 24 F.4th at 1314 ("[t]his is a factual inquiry, taken up during a Rule 29 motion and, if appropriate based on the circumstances of the case, incorporated into jury instructions.").

C. <u>Defendant's request for grand jury transcripts</u>

Defendant believes that the government provided incorrect instructions that affected the grand jury's assessment of probable cause and thus requests production of the grand jury transcripts. The court finds there is good cause to grant defendant's request on a limited basis.

Federal Rule of Criminal Procedure 6(e)(2) provides that grand jury transcripts must be kept secret "[u]nless these rules provide otherwise." Fed. R. Crim. P. 6(e)(2). A court may release

**James C. Mahan**
**U.S. District Judge**

- 8 -

grand jury transcripts and thus "lift the secrecy of grand jury proceedings" if it determines that (1) the desired material will avoid a possible injustice, (2) the need for disclosure is greater than the need for continued secrecy, and (3) only relevant parts of the transcript will be disclosed. *Id.* Disclosure should be ordered only where the party seeking the transcripts has demonstrated that a particularized need exists that outweighs the policy of secrecy. *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986).

The court will analyze each of the three criterion. The first criterion, that production of the desired material will avoid a possible injustice, weighs in favor of defendant. Instructional errors before the grand jury, intentional or unintentional, warrant disclosure of grand jury transcripts. *See* Fed. R. Crim. P. 6(e)(3)(E)(i-ii). It is both reasonable and in the purview of equity to require a portion of the grand jury transcripts to determine whether there was instructional error.

An analysis of the second and third criterion compels the court to allow the production of the transcripts, but for a narrow purpose. Once the grand jury finishes its activities, the interest in grand jury secrecy is "reduced." *See Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 223 (1979). The indictment was returned on May 19, 2020. (ECF No. 1). The grand jury has concluded its activities, and there is a lesser need for continued secrecy.

The court must limit the scope of defendant's request only to what the court deems absolutely necessary. The defendant takes issue with the entirety of the proceedings, but he only specifies issues with the grand jury instructions. (ECF No. 69 at 26-27). To avoid granting an overbroad request, the court believes that defendant is entitled to the portion of the transcript where the government instructed the grand jury on the elements of the federal kidnapping offense.

**James C. Mahan**
**U.S. District Judge**

- 9 -

The government has stated that it will provide the court, *in camera*, with a copy of the grand jury transcript of the instructions if the court requests it to do so. (ECF No. 78 at 21 n.10). The court orders the government to provide this portion of the transcript.

D. Defendant's request for a bill of particulars

Defendant requests a bill of particulars because he believes the indictment is defective. The court has already rejected this argument and adopts the stance of the government in its entirety.

A motion for a bill of particulars is appropriate when a defendant requires clarification to prepare a defense. *Will v. United States*; 389 U.S. 90, 99 (1967); *United States v. Clay*, 476 F.2d 1211, 1215 (9th Cir. 1973). It is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation, and to protect against double jeopardy. *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1980). It is to be sought within fourteen (14) days of a defendant's arraignment or at a later date if the court permits. Fed R. Crim. P. 7(f).

In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government. *Giese*, 597 F.2d at 1170. Full discovery will obviate the need for a bill of particulars. *Id*. "A defendant seeking particularization has the burden of showing by brief, affidavit, or otherwise that nondisclosure would lead to prejudicial surprise or the obviation of opportunities for meaningful defense preparation." *United States v. Jones*, No. 2:12-cr-00400-APG-GWF, 2013 WL 5954489, at *1 (D. Nev. Nov. 6, 2013).

Defendant is not entitled to a bill of particulars. He has made this request 822 days after his arraignment, lending credence to the government's belief that such a request amounts to a

**James C. Mahan**
**U.S. District Judge**

- 10 -

fishing expedition of its case. Defendant has been afforded the benefit of gleaning into the government's theory of the case by going through a preliminary hearing where the government put on testimony and made arguments. Finally, defendant even acknowledges in his motion that he has notice of how the government will likely proceed at trial. Granting defendant's request for a bill of particulars would be grossly unfair to the government. Accordingly, the court must deny defendant's request.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to dismiss (ECF No. 69) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the government will provide the court, *in camera*, with a copy of the grand jury transcript of the instructions the government provided to the grand jury.

DATED October 18, 2023.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**