UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>JOHN MATTHEW CHAPMAN,<br><br>Defendant(s). | Case No. 2:20-CR-91 JCM (DJA)<br><br>ORDER |

Presently before the court is defendant John Matthew Chapman ("defendant")'s motion *in limine* to preclude the testimony of the government's proposed expert witness or, in the alternative, for a *Daubert* hearing. (ECF No. 201). The government filed a response in opposition to defendant's motion *in limine*. (ECF No. 219).[1]

**I.  Background**

Defendant was initially charged by complaint in this district on February 20, 2020, with one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1). (*See generally* ECF No. 2). He made his initial appearance and had his detention hearing on May 1, 2020. (ECF No. 3). A preliminary hearing commenced on May 15, 2020, before Magistrate Judge Brenda Weksler. (ECF No. 13). On May 19, 2020, a grand jury returned a one-count indictment charging defendant with the instant offense. (ECF No. 1).

---

[1] Although LCR 12-2 is silent on the permissibility of filing a reply to a motion *in limine*, LR 16-3 elucidates that reply briefs "will be allowed only with leave of the court." LR 16-3. The court extends this interpretation to LCR 12-2, especially considering the time-sensitive nature of the case, as calendar call is set for April 17, 2024.

**James C. Mahan**
**U.S. District Judge**

On February 29, 2024, the government filed a notice of intent to introduce the expert report and opinions of Dr. Laura Knight ("Dr. Knight"). (ECF No. 161). Ten days prior, Dr. Knight authored a report in which she concluded that defendant, who is alleged to have killed victim J.F ("the victim"), made statements consistent with death by smothering and the condition of the body at autopsy. (ECF No. 161-1 at 7).

Dr. Jennifer Nara ("Dr. Nara"), on behalf of the Clark County coroner's office, conducted the autopsy examination of the victim. (ECF No. 197 at 1-2). In her report, Dr. Nara concluded, "[b]ased upon the autopsy findings and toxicology analysis [,] the cause of death is undetermined." (ECF No. 201 at 4). Dr. Nara also found that the manner of J.F.'s death was undetermined. (*Id.*).

Defendant alleges that the government selectively provided Dr. Knight with hundreds of pages of police reports and his interrogation. (*Id.*). Dr Knight concluded that "[b]ased on my review of the materials provided . . . it is my medical opinion that [J.F.] died as a result of asphyxia due to smothering, and the manner of death is homicide." (ECF No. 161-1 at 8).

In his motion to preclude Dr. Knight's testimony, defendant posits that Dr. Knight's testimony invades the province of the jury, as it wholly depends on crediting defendant's statement to law enforcement wherein he made a confession and would be prejudicial under Federal Rule of Evidence 403. (ECF No. 201 at 5, 8). The court does not find defendant's reasoning persuasive, and accordingly deems a *Daubert* hearing unnecessary.

**II.    Legal Standard**

   A.  Motions *in limine*

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. Motions *in limine* are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial

James C. Mahan
U.S. District Judge

- 2 -

evidence. *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions *in limine* may be used to exclude or admit evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Federal Rule of Evidence 609).

Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("[t]he district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion.").

"[*I*]*n limine* rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

B. Expert testimony

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed R. Evid. 702.

**James C. Mahan**
**U.S. District Judge**

The district court serves a gatekeeper function in evaluating scientific testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). When a district court is faced with a proffer of scientific testimony, it must make a preliminary determination under FRE 702 whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* at 592-93. A key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be tested. *Id.* at 593.

The objective of this gatekeeping requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). This gatekeeping requirement applies not only to scientific testimony, but also to all expert testimony covered by FRE 702. *Id.* at 147-49.

The trial court has the role of keeping out expert testimony that is not relevant and has broad latitude in exercising this function. *Cooper v. Brown*, 510 F.3d 970, 942 (9th Cir. 2007). The court, as the proponent of evaluating whether an expert's testimony is relevant, should not limit its consideration to the strength or existence of the expert's opinion. *See United States v. Rahm*, 993 F.2d 1405, 1411 (9th Cir. 1993). Instead, the ultimate consideration is whether the expert's testimony would assist the jury in drawing its own conclusion as to a fact at issue. *Id.*

**III.   Discussion**

    A.  <u>Province of the jury</u>

Defendant first avers that failing to preclude Dr. Knight's testimony would invade the province of the jury. A jury views an expert with "an aura of special reliability and trustworthiness." *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973). A party should

James C. Mahan
U.S. District Judge

- 4 -

not use expert testimony as a means to bolster or impugn witness credibility or to offer an opinion about the defendant's motive. *See United States v. Lukashov*, 694 F.3d 1107, 1115-17 (9th Cir. 2012).

In his motion, defendant argues that it is for the jury to decide how to interpret the meaning of his statement to law enforcement, whether or not to credit his statement, and whether it views the admitted evidence as corroborating or contradicting the statement. (ECF No. 201 at 6). He further argues that "Dr. Knight is no more qualified to answer these questions than the jury. Yet her purported testimony would allow her to answer these questions by testifying that, based on her crediting [defendant]'s statement, she decided that [J.F.] . . . was killed by means of suffocation." (*Id.*).

Defendant believes that Dr. Knight's opinion that the victim was murdered is based on her interpretation that he said so when confessing to police. As the government notes, it did not disclose Dr. Knight to testify that defendant was telling the truth in his statement to law enforcement and will not elicit such testimony at trial. (ECF No. 219 at 6). Accordingly, the government believes this is a nonissue, and the court agrees.

Dr. Knight will testify that defendant's statements are consistent with death by smothering via duct tape over the mouth and nose. (*Id.*). Dr. Knight's testimony, which will note inconsistencies among evidence in the case, is not equivalent to bolstering. It is important for the jury to understand how suffocation, the alleged cause of death, occurs. As the government correctly reasons, "[w]hether the jury believes [defendant's] statements remains completely in their [sic] purview." (*Id.*). Allowing Dr. Knight to testify would not invade the province of the jury.

. . .

B. <u>Federal Rule of Evidence 403</u>

Defendant next argues that failure to preclude Dr. Knight's testimony would raise concerns pursuant to Federal Rule of Evidence 403. This rule provides that the court may exclude relevant evidence if its probative value is substantially outweighed by a multitude of factors, including *unfair* prejudice. *See* Fed. R. Evid. 403 (emphasis added).

Defendant takes issue with Dr. Knight's proposed testimony as to the amount of time it takes to die by suffocation and the physical processes experienced by the body. (ECF No. 201 at 8). Specifically, defendant claims that "this information cannot assist the jury in deciding whether [J.F.] was intentionally killed and whether [defendant] killed her." (*Id.*)

It is axiomatic that virtually all evidence is prejudicial, but that does not automatically render the evidence as "unfairly" prejudicial pursuant to Federal Rule of Evidence 403. The court adopts the government's argument that the mechanism of death is relevant in corroborating specific portions of defendant's statement with medical insights unavailable to the common juror.

Defendant offers no specific evidence as to how Dr. Knight's testimony would unfairly prejudice him, and the court finds that allowing her to testify would not raise any concerns under Federal Rule of Evidence 403. *See Old Chief v. United States*, 519 U.S. 172, 193 (1997) (O'Connor, J., dissenting) ("[c]ertainly, Rule 403 does not permit the court to exclude the [g]overnment's evidence simply because it may hurt the defendant.").

C. *Daubert* hearing

Given the court's findings, *supra*, it is unnecessary to conduct a *Daubert* hearing, especially when there is no question as to Dr. Knight's qualifications. A forensic pathologist should be able to evaluate a defendant's out-of-court statements in the context of evaluating the mechanism of death that he himself described.

**James C. Mahan**
**U.S. District Judge**

- 6 -

Defendant's statements have already been deemed admissible at trial, and thus they are sufficiently reliable for a jury to consider as evidence. Defendant believes that Dr. Knight, a forensic pathologist, should look to the autopsy only when rendering her conclusions. However, the government's response contains numerous citations to medical literature in which forensic pathologists have evaluated not only the autopsy, but also medical histories, crime scene evidence, and witness statements. (ECF No. 219 at 5). Dr. Knight properly relied upon defendant's admissible out-of-court statements to law enforcement, and there is no doubt that she should be permitted to testify as to the cause and manner of the victim's death.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion *in limine* to preclude the testimony of the government's proposed expert witness or, in the alternative, for a *Daubert* hearing (ECF No. 201) be, and the same hereby is, DENIED.

DATED April 12, 2024.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**