UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>JOHN MATTHEW CHAPMAN,<br><br>Defendant(s). | Case No.2:20-CR-91 JCM (DJA)<br><br>ORDER |

Presently before the court is defendant John Matthew Chapman ("Chapman")'s motion for a judgment of acquittal. (ECF No. 306). The government filed a response (ECF No. 309), to which Chapman replied (ECF No. 311).

Also before the court is Chapman's motion for a new trial. (ECF No. 305). The government filed a response (ECF No. 310), to which Chapman replied (ECF No. 312).

**I.     Background**

This criminal action concerns a kidnapping that preceded the death and murder of a woman identified in all pleadings by the initials "J.F." ("J.F." or "the victim").

As alleged in the complaint, in mid-September of 2019, Chapman drove J.F. from her residence in Pennsylvania to Las Vegas. (ECF No. 2 at 6). The signatory of the complaint, a special agent with the Federal Bureau of Investigation ("FBI"), alleged that Chapman "misled" J.F. to believe the purpose of the trip was a vacation to look at potential residences in Las Vegas. (*Id.*). The government alleges that this purpose was a ruse, as Chapman developed a plan before the couple left Pennsylvania to kill the victim and even had a "kill kit" ready before their departure

for Nevada.  (*Id.*).

Chapman and J.F. arrived in the Las Vegas, Nevada area on September 23, 2019.  (*Id.*). Two days later, Chapman convinced her to drive into the desert under the guise of participating in a sadomasochistic and bondage-themed photo shoot.  (*Id.*).  Upon arriving in the desert in Lincoln County, Nevada, Chapman used plastic zip ties to affix the victim to a signpost.  (*Id.*).  After applying duct tape to her mouth and then to her nose, Chapman watched the victim die from asphyxiation.  (*Id.*).

Subsequently, Chapman left J.F.'s naked body next to the signpost and traveled back to Pennsylvania, discarding her clothing at various locations along the return route.  (*Id.*).  Chapman admitted that he killed J.F. for financial reasons.  (*Id.*).  The Lincoln County sheriff's office reported that it had located a body on October 5, 2019, later identified as that of J.F.  (*Id.* at 6-7).

Chapman was initially charged by complaint in this district on February 20, 2020, with one count of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1).  (ECF No. 2).  He made his initial appearance and had his detention hearing on May 1, 2020.  (ECF No. 3).

 On May 1, 2024, following an eight-day trial, a jury found Chapman guilty of kidnapping resulting in death.  (ECF Nos. 292; 299).  Chapman's sentencing hearing is set for August 2, 2024. (ECF No. 292).  Chapman has concurrently filed (1) a motion for a judgment of acquittal and (2) a motion for a new trial.  (ECF Nos. 306; 305).

Although Chapman avers that the government failed to prove beyond a reasonable doubt that he met the four elements required for a rational juror to find him guilty of kidnapping resulting in death, the crux of his motion for a judgment of acquittal hinges on the holding element of this charge.  (*See generally* ECF No. 306).  Specifically, Chapman takes issue with the government's theory that deception on its own satisfies the holding requirement.  (*Id.* at 2).  Chapman argues that

the holding requirement "demands the defendant impose a restraint *above and beyond the deceptive ruse itself*, for example [,] by using force or fear to restrain the [victim]." (*Id.* at 11) (emphasis added).[1]

Chapman also moves for a new trial, alleging that "the [c]ourt's unprecedented exchange with the jurors in this case coerced the verdict." (ECF No. 305 at 2). Because the Ninth Circuit has not directly addressed what specifically constitutes a holding in inveiglement[2] cases, such as the instant matter, and because no juror stated that he or she was coerced by the judge to return a guilty verdict, the court denies both of Chapman's motions.

## II.     Legal Standard

### A.  Motion for judgment of acquittal

A defendant may move for a judgment of acquittal within fourteen days after a guilty verdict. Fed. R. Crim. P. 29(c). Such a motion is reviewed for sufficiency of the evidence. *United States v. Stoddard*, 150 F.3d 1140, 1144 (9th Cir. 1988).

"The standard of review for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Inzunza*, 638 F.3d 1006, 1013 (9th Cir. 2011) (emphasis in original) (internal quotation marks omitted) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979) (explaining that "the critical

---

[1] Chapman includes a typographical error in his motion when stating that the holding requirement "demands the defendant impose a restraint . . . for example [,] by using force or fear to restrain the defendant." (*Id.*). The court assumes Chapman meant to say, "by using force or fear to restrain *the victim*."

[2] "Inveiglement," which is the form of kidnapping alleged in this case and one of the methods of kidnapping provided in the federal kidnapping statute, is defined as "to lure or entice or lead astray by false representations or promises, or other deceitful means." *United States v. Hoog*, 504 F.2d 45, 51 (8th Cir. 1974)

inquiry" is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt")).

"[The] district court must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002). "Circumstantial evidence and inferences drawn from [such evidence] may be sufficient to sustain a conviction." *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992).

B.  Motion for new trial

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." *United States v. Andrade*, 993 F. Supp. 2d. 1269, 1276 (D. Nev. 2014).  The district court may exercise its discretion to grant a new trial.  *See United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).

Although determining whether to grant a motion for a new trial is left to the district court's discretion, "it should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Johnson*, No. 2:10-cr-00190-GMN-RJJ, 2012 WL 3638606, at *2 (D. Nev. Aug. 22, 2012) (citing *Pimentel*, 654 F.2d at 545).  Moreover, the defendant bears the burden of persuasion. *United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989).  Such an extraordinary remedy is appropriate, for example, when a court makes an erroneous ruling during the trial and that, but for that erroneous ruling, the outcome of the trial would have been more favorable to the defendant.  *See United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978).

. . .

**III.     Discussion**

   A. <u>Motion for judgment of acquittal</u>

The court will first address Chapman's motion for judgment of acquittal. (ECF No. 306). In adjudicating this motion, the court must address each of the four elements of the instant offense, which is kidnapping resulting in death, a violation of 18 U.S.C. § 1201(a)(1).

As Chapman provides in his motion, the government must prove the following: (1) the defendant kidnapped the victim through one or more means, such as inveiglement or by decoy; (2) the defendant held the victim against the victim's will; (3) there was an interstate nexus, meaning that the defendant traveled in interstate commerce in committing and in furtherance of the offense; and (4) the kidnapping resulted in death. (*Id.* at 10); 9th Cir. Model Crim. Jur. Instr. 17.1 (2023 ed.). The court will begin its analysis by discussing the holding element, because it encompasses an overwhelming majority of Chapman's motion.

   *i.     Holding or detention*

Chapman's motion begins with a contradiction. On one hand, Chapman argues that "a holding does not occur unless the defendant uses actual force or fear to constrain the victim" and "[i]f a physical restraint is essentially coextensive with another crime, then a kidnapping does not occur." (ECF No. 306 at 4-5). However, Chapman later concedes that "[t]he Ninth Circuit hasn't squarely addressed the contours of the holding requirement in inveiglement cases." (*Id.* at 12).

Chapman proceeds to cite and summarize a surfeit of inapposite cases, none of which directly holds that physical force or the threatened use of physical force is required to constitute a holding under the federal kidnapping statute. As the government aptly points out, just because force was used in the circumstances of the cases cited by Chapman does not equate to a broad holding that force is required in *all* circumstances involving inveiglement. (ECF No. 309 at 18)

(emphasis added); *see United States v. Wills*, 346 F.3d 476, 493 (4th Cir. 2003) ("[t]he [federal kidnapping] statute has no requirement of prior [physical] restraint.").

The government's position is that deceit alone constitutes a holding. Given the dearth of case law in the Ninth Circuit elucidating the holding element of the federal kidnapping statute, the court looks to other circuits for guidance on this issue. The Fifth Circuit has held that "non-physical restraint [,] for instance, fear or deception [,] can be sufficient to restrain a person against her will." *United States v. Carrion-Caliz*, 944 F.2d 220, 225 (5th Cir. 1991). Similarly, the Eighth Circuit has held that deception, specifically in the form of the victim being induced into accepting a ride from the defendant under false pretenses, was sufficient to constitute a kidnapping by inveiglement. *See Hoog*, 504 F.2d at 51.

Here, there is sufficient evidence for a rational juror to find that Chapman held the victim against her will through deceit. Chapman presented the trip to the victim under the guise of a camping excursion, coinciding with his internet searches on how to dispose of a body. Upon the victim's protesting that she did not want to partake in a camping trip, Chapman told the victim that they were going on a vacation to Las Vegas. (Gov't trial exhibit 26-a at messages 520 and 522; 1046 ("I guess buying tickets for a Vegas vacation for me and you is it love [sic]")). The victim believed that they would go house-hunting and potentially get married. This was not the case, as the government's trial exhibit 28 shows that the night before the couple arrived in Las Vegas, Chapman searched online for terms such as "dump," "body," and "Nevada." (Gov't trial exhibit 28 at 111).

Accordingly, the jury rationally concluded that Chapman's deceit alone, as opposed to his using force, constituted a holding and justified a guilty verdict.

. . .

## ii. Inveigling

The court can summarily address the remaining three elements of the federal kidnapping statute and discuss how a rational trier of fact could have found proof of guilt beyond a reasonable doubt.

In its instructions to the jury, the court defined inveigling as "to lure or entice or lead astray by false representations or promises, or other deceitful means." *Hoog*, 504 F.2d at 51. Lying to a person about the purpose for which a trip is taken is sufficient to demonstrate inveiglement. *See id.* at 47-51.

Here, there is no doubt that Chapman employed deceitful means in his communications with the victim. As stated, *supra*, Chapman proposed going to Las Vegas *after* the victim expressed her dismay at partaking in a camping trip. More relevant to this issue is the timing of Chapman's internet searches, as he searched online for terms such as "dump," "body," and "Nevada" a mere day before the couple arrived in Las Vegas. Therefore, although the victim believed she was going to be starting a new life with Chapman, she was unaware of his true plan, which was to kill her.

Accordingly, the jury rationally concluded that Chapman's inveiglement of the victim justified a guilty verdict.

## iii. Interstate nexus/interstate commerce

There is no contention that Chapman drove the victim from Pennsylvania to Nevada, thus crossing state lines. This fact, in and of itself, is sufficient to establish the interstate nexus requirement of the federal kidnapping statute.

Additionally, vehicles and phones are instrumentalities of interstate commerce. *See United States v. Dela Cruz*, 358 F.3d 623, 625 (9th Cir. 2004) (holding that a cell phone is an

instrumentality of interstate commerce and that the government is not required to prove that the particular cell phone at issue was used in interstate commerce). There is direct evidence of Chapman using the victim's cellphone to impersonate her, as he sent text messages to the victim's friend pretending that the victim was still alive. (Gov't trial exhibit 14-c at messages 2 and 4). Chapman presents no analogous, binding cases to rebut the authority cited by the government.

Accordingly, the jury rationally concluded that Chapman traveled in interstate commerce in committing and in furtherance of the offense, thus justifying a guilty verdict.

    *iv.*  *Resulting in death*

The final element of the federal kidnapping statute relates to causation, as the government must prove beyond a reasonable doubt that the kidnapping resulted in the death of the victim. Here, Chapman's argument is that the government failed to establish "a temporal and causal connection between the death and the kidnapping." (ECF No. 306 at 28). Specifically, Chapman points to the three-day temporal break between when the road trip to Las Vegas was complete and when the fatal trip to the desert occurred. (*Id.* at 29).

In analyzing whether there was a temporal break that would negate the fourth element of the federal kidnapping statute, the court looks to Chapman's deceit, which existed before leaving Pennsylvania and through the time he killed her. The Supreme Court has clarified that a kidnapping ends when the victim is free. *See United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999) ("[a] kidnapping, once begun, does not end until the victim is free.").

Accordingly, there was no "temporal break" between the road trip to Las Vegas and the drive to the desert. The jury rationally concluded that Chapman's kidnapping of the victim resulted in her death.

The court therefore denies Chapman's motion for a judgment of acquittal. (ECF No. 306).

B. Motion for new trial

Chapman next moves for a new trial on the grounds that the judge's "unprecedented" exchange with jurors #4 and #11 "coerced" a guilty verdict. (ECF No. 305 at 2). When viewing the conduct of the court under the totality of the circumstances and both Chapman's and the government's post-verdict investigations, the court finds that Chapman does not meet the high standard necessary to grant his request.

    *i.    Interaction with the jury*

The jurors sent several notes to the judge during their deliberations. The foreperson inquired if a juror could ask a question to the judge directly, thus contravening the jury instructions that any and all communications to the court must come in the form of a handwritten note. (ECF No. 301 at 16-17). The judge responded to the foreperson by explaining, for the third time, that "[y]ou are to consider only the evidence that's presented in open court in reaching your verdict. So these other questions, it's not question-and-answer time." (*Id.* at 16).

Roughly two and a half hours later, the judge received a note from a juror that is the subject of the instant motion. The note read as follows: "[t]here is one juror that would like to be replaced by the alternate. Is that an option? Due to the juror using biased opinion." (*Id.* at 18). After agreeing with counsel for Chapman that the juror should be canvassed, the judge questioned the foreperson by asking "[w]hat's the problem?" (*Id.* at 21).

The foreperson directly stated that the juror who was allegedly using biased opinion would "not take the evidence into consideration or the instructions into consideration." (*Id.*). Accordingly, it was the foreperson who explained that juror #11 was not following her oath. (*Id.*).

The colloquy between the judge and juror #11 ended with the judge asking the juror if she could base her decision on the evidence. (*Id.*). Counsel for Chapman fixates on the clause "you're

going to have to surrender that opinion." (*Id.*).  However, it is clear from reading the transcript in its entirety (as well as actually being present in the courtroom) that the judge meant for the juror to surrender any *biased* opinion, not an opinion based on the evidence.  Indeed, the very next line of the transcript reads, "[y]ou've gotta base your decision *on the evidence*." (*Id.*) (emphasis added).

When asked by the judge if juror #11 was deliberating and participating, the other jurors were visibly shaking their heads to indicate that she was not doing so.  (*Id.* at 27).  The jury resumed deliberations and after a thirty-two minute recess, the jury returned a guilty verdict.

           ii.       *Legal standard regarding juror coercion*

"Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988).  Courts evaluate whether coercion has occurred by considering any "supplemental charge given by the trial court in its context and *under all the circumstances*." *Id.* at 237 (internal citation omitted) (emphasis added).  Coercion occurs when the statements of the court during jury deliberation "would be likely to coerce certain jurors into relinquishing their views in favor of reaching a unanimous decision." *Jiminez v. Myers*, 40 F.3d 976, 979 (9th Cir. 1993) (internal citation omitted).

           iii.       *Analysis*

The court finds that the colloquy with juror #11 does not amount to coercion and that a new trial is not warranted.  During the course of the trial, the judge informed the jury at least three times that they should consider only the evidence presented and to re-read the jury instructions, particularly the instruction on bias.  At no point was the judge attempting to elicit a specific verdict from the jury, as he stated, "I have no dog in the hunt.  I'm not trying to send you a secret code message or something about, oh, well, you should do this or you should do that.  It's not that."

(ECF No. 301 at 24).  Accordingly, the judge's primary concern was that juror #11 was not fulfilling her oath to consider only the evidence and follow the jury instructions.

The same day the jury reached its verdict, FBI Special Agent Zachary Franklin interviewed each juror in the hallway and provided his findings on an official FD-302 form, which is a self-authenticating document.  When asked if they reached their decision to convict Chapman by their own free will and choice, and that no one coerced or pressured them into their decision, each juror, including jurors #11 and #4, responded in the affirmative.  (ECF No. 310-1 at 2).

Juror #11 stated, "I stand by the guilty verdict.  I changed my mind *based on the facts* to reach a conclusion."  (ECF No. 310-2 at 2) (emphasis added).  While the juror acknowledged that she felt pressure from the judge and jury, she reaffirmed that she came to her conclusion based on the facts of the case.  (*Id.*).

As it pertains to juror #4, the defense investigator never reveals the contents of her conversation with this juror.  Moreover, the judge did not engage in a colloquy with juror #4.  Accordingly, there is no evidence to indicate any coercion regarding this juror.

When viewing the circumstances in their totality, the court finds that no juror was coerced in this case.  *See Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir. 1983) ("[t]o determine whether such coercion of the jury's deliberative process occurred, the inquiry by the judge must be viewed in light of the context in which it was made, not in isolation.").

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant John Matthew Chapman's motion for a judgment of acquittal (ECF No. 306) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion for a new trial (ECF No. 305) be, and the same hereby is, DENIED.

DATED June 26, 2024.

_____
UNITED STATES DISTRICT JUDGE